# Mast's Appeal.

*Advancement, charged by Testator against his Daughter.—Effect of on Claim remitted to her Husband.*

1. One purchased a farm from his wife's father, during her lifetime, and having paid most of the purchase-money, a portion of the balance due was remitted by the father, who took a bond for the remainder; the amount thus remitted was charged to the daughter in the "family book," as cash paid for her. After her death her husband administered upon her estate, and upon account filed, he was sought to be charged with the sum remitted: *Held*, that the transaction did not make the husband the debtor of the wife, and that he was not chargeable with it in administering upon her estate.

2. The amount remitted by the father was an advancement to the daughter, though made to the husband; it was not a debt due to the wife from the husband, for when remitted, he ceased to owe it, and the direction in the father's will, that it should be deducted from the daughter's share, could not operate as an assignment of it as a debt against her husband.

3. The husband is not chargeable for receiving the amount remitted as his wife's money, for it was remitted directly from the father to the son-in-law, and was not her property under the Act 11th April 1848, so that her husband could be responsible to her for receiving it.

APPEAL from the Orphans' Court of *Berks county.*

This was an appeal by John P. Mast, guardian of the minor children of Sarah Ann Good, deceased, from the decree of the court below on the account of Owen B. Good, the husband and administrator of deceased.

Mrs. Good was a daughter of Joseph Mast, deceased, in whose will there was the following provision: "It is my will, and I do order and direct, that the balance of my real and personal estate be equally divided between my said daughter Sarah Ann and my son Charles, share and share alike, *whatever charges, however, that is or may be standing on book account against said Sarah Ann, are to be taken account of as against her without interest.*"

In the book of the testator there were several charges against Sarah Ann, amounting together to $2241.30. Among them there was the following: "*April 4th* 1853, *to cash paid her on the purchase-money of the property that they now live on,* $1627.75." Before this date, Sarah Ann had become the wife of Owen B. Good, and this charge was made by the testator under the following circumstances:—

On the 4th of April 1853, Joseph Mast, the testator, and Jacob K. Mast, as executors of Jacob Mast, deceased, sold to Owen B. Good a farm for $12,051.80, and received from him $8400 on account. Joseph Mast, the father-in-law of Good, accounted to the estate of Jacob Mast for the balance of the purchase-money, took from Good his bond for $2000, and charged the remaining $1627.75 against his daughter as above stated.

[Mast's Appeal.]

The conveyance was to Owen B. Good in fee simple. Before the account of the executor of Joseph Mast was settled, Mrs. Good died, and her husband had taken out letters of administration on her estate. In this capacity he appeared before the auditor, to whom the executor's account was referred, and claimed that the sum of $1627.75 charged by testator as above stated, was an absolute gift, and not an advancement. The auditor decided that it was an advancement, and not a gift, and his report was subsequently confirmed by the court. When Mr. Good, the accountant in this case, took the inventory of the goods and chattels of his deceased wife, this sum of money was included by the appraisers, he being present and objecting thereto, asserting that his father-in-law had made him a present of it. When he filed his account he charged himself with the entire amount of the inventory, but took credit for this sum as for "a book account improperly charged."

This account was referred to Daniel Ermentrout, Esq., as auditor, by whom this sum was charged against the accountant, but on exceptions filed by him the Orphans' Court struck it out, and with this correction confirmed the report.

The case was then removed into this court as above stated, where it was averred that the court below erred in striking from the report the item of $1627.75 above mentioned.

*John Banks*, for appellant.—The first and leading question in this case is, was the money the property of the husband, or was it the property of the wife? The true answer is to be found in the intention of the father who gave it.

Money of the wife that goes into the hands of the husband will be his or not, according to circumstances. Reduction into the possession of the husband is not the foundation of his right: it is only evidence of the exercise of his will. He may have the possession without any intention of making it his own. It is his at common law or not, as he wills to make it so or not. It cannot be made his against his will: Siter's Case, 4 Rawle 478; Hess's Appeal, 1 Watts 255; Hinds's Estate, 5 Wh. 138; Timbers *v.* Katz, 6 W. & S. 290; Gray's Estate, 1 Barr 329; Woelpper's Appeal, 2 Barr 71; Gochenauer's Estate, 11 Harris 463.

Joseph Mast was the donor of the money if it was a gift. What he did is to be looked at to see to whom he gave it and on what terms.

Every gift requires the assent of the donor. What evidence is there that the donor intended this money as a gift to the accountant? Owen Good owed his father-in-law a debt. The father-in-law charged this debt as an advancement made to his daughter. It is charged as a debt against her in his family

book, but in his will it is clearly made an advancement.  In the book, the date, amount, and that it was in the purchase-money of the land, is specifically stated.

It is to be deducted from her share in the estate—it is a part of her share in his estate, and is therefore given to her and not to him.  There was no consideration passing from the husband. The wife was his daughter and object of his bounty.  The consideration moved from her; therefore the gift passed to her as an advancement so as to do justice to his other child.

The husband owed the money as a debt, and when the father charged the amount to her as an advancement, it operated in equity as a transfer of the debt to her.  If this is not so, the daughter and her children will be deprived of a portion of their share in the estate.

Since the Act of 1848, in relation to the right of married women, the onus of proof is changed.  The accountant must prove that the money was a gift to him.  If he fails to prove that, then he holds the money in trust for his wife.  If it was an advancement by the father to the daughter, and by the transaction passed into the hands of the husband, the money was made hers; as it was thus made hers, it is presumed he received it for her.  There is no proof that the wife consented that it should be the property of the husband, or that the father intended that it should be his: Johnston *v.* Johnston's Administrators, 7 Casey 454.

The doctrine contended for would not lead to fraud upon creditors.  It is not the policy of the law that creditors may take the property of the wife to pay the husband's debts: on the contrary, it is that they shall not: Barncord *v.* Kuhn, 12 Casey 390.

For this money the husband gave no consideration.  He holds the title in his name.  He owed this sum to the father-in-law, who, it appears, did not intend that this money or any part of it should be given to the accountant.  He gave it to his daughter not as a gift, but as an advancement.  She was to account for it to her brother.  It was her he was dealing with.  It was given to her, and though held in the husband's hands, it was nevertheless his wife's.  It nowhere appears that it was given to him, or intended to be given to him.  It ought therefore to be charged against the accountant.  To so charge it would do no injustice to him.  If it goes into the funds he will get his equal share of it.  This would be justice to all concerned.

*John S. Richards*, for appellee, argued that there was nothing in the case to warrant the idea that the money in dispute was ever regarded by either of the parties as a debt due by Good or his wife to her father, or by Good to his wife, but that on the

contrary it was manifest that in the sale of the farm by Mast to his son-in-law, this portion of the purchase-money was remitted by the vendor to his son-in-law, which he might well do in consideration of dower which his daughter was to receive in a farm so valuable.

That the policy of the law was to discountenance an implied indebtedness of husband to wife, both before and after the Act of 1848. To make this money a loan to him required the clearest proof: Hinds's Estate, 5 Whart. 142; Gray's Estate, 1 Barr 328; Gochenauer's Estate, 11 Harris 463; Gamber v. Gamber, 6 Id. 363. That the assumption of title by the husband, the actual use of the wife's chose in action, was the criterion, which in this case was as complete as could be: Tritt's Administrators v. Colwell's Administrators, 7 Casey 234; Woelpper's Appeal, 2 Barr 71.

There were no words used by the donor indicating an intention to create a trust to this extent for the separate use of his daughter.

Hayden and Wife v. Mentzer, 10 S. & R. 333, and Benedict v. Montgomery, 7 W. & S. 238, are in point, and rule this case.

The argument of the appellant is founded upon the theory that the gift or remission of the debt was to Mrs. Good, and that the Act of 1848 effects such a change in the relation of husband and wife, that her ownership is preserved and kept up indefinitely by presumption of law. But this theory is erroneous, because, although the advancement was to the daughter, the conveyance to her husband being complete and unrestricted, made it a gift to him. The position taken by the appellant, to wit, that money of the wife may go into the husband's hands without any intention to make it his own, is not denied. It is supported by the authorities cited. But this was not money belonging to the wife, and even if it were, his keeping it for five years without any intimation from either that he owed it to her, her heirs cannot claim it.

But no money passed in this case. Part of the purchase-money was remitted, and a complete title given. If it had been considered a debt for any purpose, it would have been included in the bond given when the title passed to Good, or another bond would have been taken for it. If there was no debt, none could be transferred by charging this advancement either in law or in equity.

Johnson v. Johnson, 7 Casey 450, is not like this, for there the money in controversy was received from the wife. Nor does Barncord v. Kuhn, 12 Casey 383, support the claim of the appellees. In that case the conveyance was in express terms for the benefit of the wife, excluding the husband entirely.

The Act of 1848 has not revoked all the old rules of law in

relation to husband and wife. Nor has this court evinced any desire to extend its provisions: Ritter *v.* Ritter, 7 Casey 396; Pettit *v.* Fretz's Executors, 9 Id. 118.

The opinion of the court was delivered, July 24th 1861, by

STRONG, J.—We are not convinced that the appellee is accountable for the sum of $1627.75 with which the appellant seeks to charge him. He had purchased a farm from his wife's father, during her lifetime, and had paid all the purchase-money except $3627.75. Of this sum the father-in-law remitted $1627.75, and took a bond for the remainder. At the same time, probably, he made the following entry in his family book: "April 4th 1853. Sarah Mast, Dr. to cash paid her in the purchase of the property which they now live on, $1627.75." Sarah Mast was his daughter, and the wife of Owen B. Good, the accountant.

It would be going very far, in our opinion, were we to hold that this transaction made the husband a debtor to the wife for the sum which the father-in-law remitted on the purchase of the farm; and if not a debtor, he is not chargeable with it in administering upon her estate. No doubt the father intended that the amount should be deducted from the daughter's share in this estate, and so he directed by his will. It was therefore an advancement, and none the less so because made to the husband of the daughter. It was the father's mode of benefiting the daughter, by enabling her husband to procure a farm, and by his will she was charged with it as an advancement. Advancements to a married daughter in gifts to her husband are not uncommon. Thus in Wentz *v.* Dehaven, 1 S. & R. 312, a release of a bond and mortgage by a father-in-law to the husband of his daughter, was held to be an advancement to her. See also Hayden *v.* Mentzer, 10 S. & R. 333, 11 Iredell 68, 1 Gray 587. In Hayden *v.* Mentzer, Chief Justice Tilghman said, "It has been denied that a father may make an advancement to his daughter, within the meaning of the Act of Assembly, by conveyance of land to her husband in fee, just as he may make an advancement by paying a sum of money to her husband. It is the property of the father, who may advance his daughter in what manner he pleases, and he may think it most for her interest to place the property under the absolute control of the husband."

How, then, can this advancement made to the wife, by remitting a part of the debt due from the husband to the father, become a debt due from the husband to the wife? Not, certainly, in consequence of any undertaking of the husband, for there was none. When the claim for the purchase-money of the farm was remitted, the accountant ceased to owe the $1627.75 to his father-in-law, and he assumed to pay it to no one else. If any

[Mast's Appeal.]

debt was then created, it was the debt of the wife, not of her husband. The donor no longer considered him a debtor. The charge in the family book was made against the wife; and when, by his will, subsequently made, the father directed that sum to be deducted from the daughter's share in his estate, the charge and the direction could not have operated as an assignment of any debt of the husband (as contended by the appellant), for there was no such debt in existence to be transferred.

The other position of the appellant, that the husband is chargeable because he received his wife's money, and there is no proof that it ever became his, is equally untenable. It assumes what is in direct conflict with the facts. The $1627.75 never was her property. It belonged to her father until it was acquitted to the husband. The cases cited to show that the money of a wife, which comes into the hands of her husband, is his at common law, or remains hers, according to his intention when he receives it, and that since the Act of April 11th 1848, it is presumed to be hers, have, therefore, no application here. Johnston v. Johnston's Administrators, the case principally relied on, is totally unlike this. There the money received by the husband belonged to the wife when it came into his hands. Obtained after the Act of 1848, it was presumed to have been received for her. She might have lent it to her husband, and he would have been under obligation to pay it. But the Act of 1848 has nothing to do with property which never was the wife's. She cannot lend to her husband what she has not.

It follows that the appellee, as administrator of his wife's estate, is not accountable for the sum in controversy, and the decree of the Orphans' Court was correct.

The decree is affirmed.